

2014 FEB 24 AM 11: 05

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69649-1-I |
| Respondent, | ) ) ) | DIVISION ONE |
| v. | ) ) | |
| FELIPE ZEFERINO-LOPEZ, | ) | PUBLISHED OPINION |
| Appellant. | ) ) | FILED: February 24, 2014 |

BECKER, J. — Appellant was convicted of identity theft in the second degree for using a Social Security number belonging to someone else. Knowledge that the number belonged to another person is an element of the crime. Because there was no evidence of that element, we reverse with instructions to dismiss for insufficiency of the evidence.

On March 9, 2010, appellant Felipe Zeferino-Lopez[1] used a Social Security card with his name on it to open a bank account at a bank in Burlington in Skagit County.

---

[1] Although the State charged the appellant as "Felipe Zeferino-Lopez," he does not sign his name with a hyphen. It is commonplace for people of Latin-American origin or descent to use two last names without hyphenating them. Appellant and defense trial counsel referred to his last name during trial as simply "Zeferino." See, e.g., Report of Proceedings at 51, 103. Hereafter, we refer to the appellant as Zeferino. See Flores-Figueroa v. United States, 556 U.S. 646, 649, 129 S. Ct. 1886, 173 L. Ed. 2d 853 (2009) (court refers to appellant as "Flores").

On April 30, 2012, local police were informed that a minor in California had attempted to set up her first bank account and learned that someone had already used her Social Security number to open a bank account. Investigation led to Zeferino.

The State charged Zeferino with second degree identity theft. A jury convicted him in November 2012. He appeals.

At trial, a bank investigator testified that she had searched the bank's records by Social Security number and discovered that the number in question was on a signature card issued when the account was opened in Mount Vernon. The person who opened the account was Zeferino. The bank had video images of Zeferino accessing the account.

A district manager of the Social Security administration gave testimony to establish that the Social Security number was assigned to another person. The witness testified that Social Security numbers are now assigned randomly, although until recently the first part of the number was assigned based upon the area where the person was applying. She said that a person who is not in the United States legally is not eligible for a Social Security number. The police officer who interviewed Zeferino testified that he admitted being in the country illegally.

Zeferino testified that he entered the United States from Mexico in 1995 when he was around nine years old. He said friends told him he needed a Social Security card to work, so he bought one with his name on it for $100. He said he had presented the card when he obtained employment at various restaurant jobs

2

and most recently at a recreational vehicle dealership. He testified that he did not know the number on the card belonged to someone else until the police contacted him about his use of the card to open a bank account.

In closing, the prosecutor argued that the testimony by the Social Security district manager proved that the number was assigned to an actual person and was "not just a random number." The prosecutor then argued that the State had proved the element of knowledge by showing that Zeferino knew that he was possessing and using the Social Security number:

> And then we have to establish that the defendant knowingly possessed the Social Security number. Instruction Number 6 defines knowingly for you. It's actually rather a lengthy instruction for such a small word. But basically knowingly means that you are aware of a fact that exists. So when we ask ourselves did the defendant know that he was possessing the Social Security number, of course he did. He knew he possessed it. He bought it. He used it. He possessed it. He knew he possessed it. And so we can kind of check that off. So we, through these means, we've established the defendant knowingly possessed a means of identification that belonged to another person.

Zeferino responded by arguing that the State failed to meet its burden of proving he knew the Social Security number belonged to another person.

In rebuttal, the prosecutor argued that the State had no burden to prove Zeferino knew the number belonged to another person:

> The final thing I want to address is counsel's argument that the State needs to prove beyond a reasonable doubt that the defendant knew that the number belonged to someone else. What I would submit to you is that this is an inaccurate reading of the instruction. First of all, it's just common sense. We would never be able to prove a case like this if we had to prove that the defendant knew the number belonged to someone else. . . . [W]e'd have to prove he broke into someone's house and stole their Social Security card. We're not going to have that case. Does it make sense that the law would require that? And it doesn't.

> So my next argument focuses on grammar, if there's any English majors in here you'll understand what I'm talking about. The requirement is that the defendant knowingly possessed identification of another person. Knowingly is an adverb. It applies to the verb that follows, which is possession or use. Knowing applies and refers to possession or use. The phrase that comes after it is the object. And knowingly does not apply to that grammatically speaking. . . . He didn't have to know that that number was specifically assigned to another individual. He didn't. He had to know that he was in possession of it and the number. He had to know he was using the number and clearly he did.

Defense counsel did not object to the State's arguments.

On appeal, Zeferino claims the prosecutor committed misconduct by misrepresenting what the State was required to prove. Alternatively, Zeferino claims defense counsel rendered ineffective assistance by failing to object to the argument. Both claims depend on whether, to prove the crime of second degree identity theft, the State must prove the defendant knew the means of identification he used belongs to another person. The State maintains that it does not bear any such burden. The issue is one of statutory interpretation. Our review is de novo. State v. Haddock, 141 Wn.2d 103, 110, 3 P.3d 733 (2000).

Identity theft in the second degree is defined by RCW 9.35.020(1) to include a mens rea of knowledge:

> (1) No person may knowingly obtain, possess, use, or transfer a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime.
> (2) Violation of this section when the accused or an accomplice violates subsection (1) of this section and obtains credit, money, goods, services, or anything else of value in excess of one thousand five hundred dollars in value shall constitute identity theft in the first degree. Identity theft in the first degree is a class B felony punishable according to chapter 9A.20 RCW.

4

(3) A person is guilty of identity theft in the second degree when he or she violates subsection (1) of this section under circumstances not amounting to identity theft in the first degree. Identity theft in the second degree is a class C felony punishable according to chapter 9A.20 RCW.

RCW 9.35.020(1)-(3). The to-convict instruction mirrored the statutory language:

To convict the defendant of identity theft in the second degree, the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about March 9, 2010, the defendant knowingly possessed or used a means of identification of another person, living or dead;
(2) That the defendant acted with the intent to commit any crime;
(3) That any of these acts occurred in the State of Washington.
If you find from the evidence that each of these elements have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
On the other hand, if after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

The United States Supreme Court confronted a similar issue on similar facts in Flores-Figueroa v. United States, 556 U.S. 646, 129 S. Ct. 1886, 173 L. Ed. 2d 853 (2009). The defendant, a Mexican citizen, secured employment in the United States by giving his employer a false name, birth date, and Social Security number, along with a counterfeit alien registration card.

The Social Security number and the number on the alien registration card were not those of a real person. In 2006, Flores presented his employer with new counterfeit Social Security and alien registration cards; these cards (unlike Flores' old alien registration card) used his real name. But this time the numbers on both cards were in fact numbers assigned to other people.
Flores' employer reported his request to U.S. Immigration and Customs Enforcement. Customs discovered that the numbers on Flores' new documents belonged to other people. The United States then charged Flores with two predicate crimes, namely, entering the United States without inspection, 8 U.S.C. § 1325(a), and misusing immigration documents, 18 U.S.C. § 1546(a). And it

5

charged him with aggravated identity theft, 18 U.S.C. § 1028A(a)(1), the crime at issue here.

Flores-Figueroa, 556 U.S. at 649.

The defendant was convicted of aggravated identity theft. A conviction under the federal statute lengthens the sentence of an offender convicted of certain other crimes if, during the commission of those predicate crimes, the offender "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." 18 U.S.C. § 1028(a)(7); Flores-Figueroa, 556 U.S. at 647. The issue on appeal was whether the government had to show the defendant knew the numbers on the counterfeit documents belonged to another person. Upon examination of the statutory term "knowingly" in context, the Court held the government had to prove the defendant knew the "'means of identification'" he or she unlawfully transferred, possessed, or used, in fact belonged to another person. Flores-Figueroa, 556 U.S. at 647. The Court found that, "as a matter of ordinary English grammar," the adverb "knowingly" applies to both the verbs and the object of the sentence. Flores-Figueroa, 556 U.S. at 650, 657.

Similar to the prosecutor's closing argument against Zeferino, the government argued in Flores-Figueroa that the difficulty inherent in proving a defendant knew the means of identification belonged to another should compel an interpretation which does not require it to do so. Flores-Figueroa, 556 U.S. at 655-57. The Court rejected this argument, observing that the element should not be difficult to prove in the classic case of identity theft committed by "dumpster diving" or "computer hacking." Flores-Figueroa, 556 U.S. at 656. For example,

6

where a defendant rummaged through a residential garbage can to find discarded bank statements or pretended to be calling from the victim's bank to get the victim's personal financial information, a jury would be permitted to infer that the defendant knew the means of identification belonged to another. Flores-Figueroa, 556 U.S. at 656.

The State contends Flores-Figueroa is not on point because the Court was interpreting a federal statute. But the State does not show there is a material difference between our rules of statutory construction and the rules employed by the United States Supreme Court.

And Flores-Figueroa is consistent with State v. Killingsworth, 166 Wn. App. 283, 269 P.3d 1064, review denied, 174 Wn.2d 1007 (2012). There, the issue was a to-convict instruction under RCW 9A.82.050 which required the jury to find that the defendant "'knowingly trafficked in stolen property.'" Killingsworth, 166 Wn. App. at 289. This court held that the most natural reading of the sentence was that "knowingly" modified both "trafficked" and "stolen property." Killingsworth, 166 Wn. App. at 289.

The State attempts to distinguish the two cases on the basis that under the Washington statute, there must also be proof the defendant acted with intent to commit a crime. RCW 9.35.020(1). The fact that our statute requires proof of both knowledge and intent is irrelevant. The issue here concerns only the element of knowledge. Flores-Figueroa is persuasive authority that the statutory term "knowingly" in this context refers to the defendant's knowledge that the means of identification belonged to another person.

In keeping with the above authorities, we conclude that the element of knowledge in second degree identity theft does not refer only to the defendant's knowledge that he is using or possessing a means of identification or financial information. It also refers to his knowledge that it was "a means of identification or financial information of another person, living or dead." RCW 9.35.020.

Due process requires the State to prove every element of a crime beyond a reasonable doubt. State v. Baeza, 100 Wn.2d 487, 488, 670 P.2d 646 (1983). Sufficiency of the evidence is a question of constitutional magnitude. State v. Alvarez, 128 Wn.2d 1, 10, 904 P.2d 754 (1995). We will reach the issue of sufficiency even though Zeferino framed his appeal in terms of prosecutorial misconduct and ineffective assistance of counsel. See State v. Aho, 137 Wn.2d 736, 741, 975 P.2d 512 (1999).

The statute required the State to prove that Zeferino knew the Social Security number he was using actually belonged to someone else. Zeferino was using a Social Security number assigned to a minor in California. The Social Security card on which it appeared listed his name, not the owner's. The only evidence about how and when Zeferino obtained the card was his own testimony that he bought it from someone for $100 in order to be able to work in the United States. He used it openly for a number of years for that purpose and then to open a bank account. His testimony does not support an inference that he knew the number on it belonged to another person.

We reverse with instructions to dismiss for insufficiency of the evidence.

WE CONCUR:

Becker, J

Cox, J.